IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK ALAN CHAR, #A0234438,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JEFFERSON; *et al.*,<br><br>Defendants. | CIVIL NO. 23-00474 LEK-KJM<br><br>ORDER DISMISSING IN PART PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND |

## ORDER DISMISSING IN PART PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND

Before the Court is pro se Plaintiff Mark Alan Char's ("Char") Prisoner

Civil Rights Complaint ("Complaint").  ECF No. 1.  In the Complaint, Char alleges

that various prison officials[1] violated the Eighth Amendment's prohibition against

cruel and unusual punishment by using excessive force (Count I), threatening his

safety (Count II), and denying him adequate medical care (Count III) during his

---

[1] Char names as defendants in both their individual and official capacities Sergeant ("Sgt.") Michael Jefferson, Corrections Officer ("CO") Casey Irvine, CO Fia Duarte, Warden Scott Harrington, Deputy Warden Lyle Antonio, Captain ("Cpt.") Joanna White, Cpt. Saia Finau, Lieutenant ("Lt.") Leighton Kaleikau, Ombudsman Robin Matsunaga, Nurse Mandy Feldt, CO Vince Moe, Cpt. Edward Vaovasa, Sgt. Michael Keopuhiwa, Jr.  ECF No. 1 at PageID.1–PageID.8.

incarceration at the Halawa Correctional Facility ("HCF"), a state prison.[2]  Char also asserts an intentional infliction of emotion distress claim under state law (Count IV).

After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the Complaint in part with partial leave granted to amend.  Char states plausible excessive force claims against Sgt. Jefferson and CO Irvine, threat to safety claims against Warden Harrington and Deputy Warden Antonio, and an intentional infliction of emotional distress claim against Sgt. Jefferson.  Char may file an amended pleading that cures the noted deficiencies in those claims dismissed with leave granted to amend on or before **January 11, 2024**.  In the alternative, Char may notify the Court in writing on or before **January 11, 2024**, that he wants to proceed only with his excessive force claims against Sgt. Jefferson and CO Irvine, his threat to safety claims against Warden Harrington and Deputy Warden Antonio, and his intentional infliction of emotional distress claim against Sgt. Jefferson, and those claims shall be served.

---

[2] Char is currently incarcerated at the HCF.  *See* ECF No. 1 at 1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0234438"; and select "Search") (last visited Dec. 8, 2023).

# I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d

3

at 1130.  When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[3]

On January 12, 2020, Sgt. Jefferson "beat[] up" Char.  ECF No. 1 at 16.  In response, Char's attorney sent a January 15, 2020 letter to Warden Harrington stating that Sgt. Jefferson should be kept away from Char for Char's "safety [and] well-being."  *Id.*

On August 21, 2021, Sgt. Jefferson told Char that he was "going to beat him up again real soon."  *Id.* at PageID.12.  On September 28, 2021, Char sent a letter to Warden Harrington and Deputy Warden Antonio describing what Sgt. Jefferson had said.  *Id.* at PageID.16.  According to Char, Warden Harrington and Deputy Warden Antonio "refused to keep [Sgt.] Jefferson away from [him]."  *Id.*  Char also called Matsunaga on October 19, 2021, saying that Sgt. Jefferson had threatened him.  *Id.* at PageID.19.  Matsunaga did not respond to Char's call.  *Id.*

On November 25, 2021, Char asked CO Duarte to call Cpt. Finau because Char wanted to report mistreatment by CO Irvine.  *Id.* at PageID.12.  Instead of Cpt. Finau, Sgt. Jefferson came to Char's cell.  *Id.*  Sgt. Jefferson said that Char

---

[3]  Char's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

must speak with him before Cpt. Finau.  *Id.*  Char told Sgt. Jefferson about CO Irvine's actions, but Sgt. Jefferson refused to call Cpt. Finau.  *Id.*  CO Duarte eventually told Char that he had called Cpt. Finau.  *Id.* at PageID.13.

While Char was waiting for Cpt. Finau to arrive, Sgt. Jefferson opened the door to Char's cell.  *Id.*  Confident that Sgt. Jefferson was going to beat him up, Char stepped out of his cell hoping that two nearby video cameras would capture whatever happened next.  *Id.*  Sgt. Jefferson aggressively approached Char, knocked Char's cane out of his hand, and proceeded to "pummel" Char's head, neck, back, and shoulders.  *Id.*  Sgt. Jefferson tried three times to strike Char in the chest with his knee.  *Id.*  When Char fell to the floor, Sgt. Jefferson attempted to break Char's leg by kicking and stomping on the side of his knee.  *Id.*  Char tried to crawl away, but Sgt. Jefferson kicked and shoved him from behind.  *Id.*  When Char got up from the floor and turned to face the door of his cell, Sgt. Jefferson "whipped" Char's cane at him, hitting Char in the head.  *Id.*  During the incident, CO Irvine encouraged Sgt. Jefferson "to beat [Char] up real good."  *Id.*  CO Duarte stood by and did nothing.  *Id.*  Another sergeant later told Char that a video recording of the incident confirmed that Sgt. Jefferson's actions were unprovoked.  *Id.*

During the early morning hours of the following day, November 26, 2021, Sgt. Keopuhiwa handcuffed Char while getting him ready to go to the emergency

room for medical treatment.  *Id.* at PageID.15.  This injured Char's wrist, and he cried out in pain.  *Id.*  Lt. Kaleikau videotaped the incident.  *Id.*

An emergency room doctor referred Char to see an orthopedic surgeon by December 3, 2021, for an MRI and to check for torn ligaments in his knee.  *Id.* at PageID.20.  On December 7, 2021, Feldt visited Char's cell and told him that he had a medical appointment.  *Id.*  Char asked for some time to get ready.  *Id.* Approximately ten minutes later, Char asked someone to inform Feldt that he was ready.  *Id.*  Feldt never returned to Char's cell, and his appointment was cancelled. *Id.*

While at the hospital, Char received a knee brace.  *Id.* at PageID.21.  On December 9, 2021, when Char moved back into the "medium SHU," CO Moe took the knee brace saying that Char could not have it.  *Id.*

Char also returned from the hospital with a new cane.  *Id.* at PageID.22. Char previously used a cane that he "borrowed" from the HCF.  *Id.*  Upon returning to the HCF, Char returned the borrowed cane.  *Id.*  On November 27, 2021, Cpt. Vaovasa came to Char's cell and instructed him to turn over his new cane because he could not have it.  *Id.*  Char refused, citing a February 2, 2018, medical record allowing his indefinite use of a cane.  *Id.*  Cpt. Vaovasa became "hostile" and threatened to take the cane if Char did not give it to him.  *Id.*  Fearing for his safety, Char handed over the cane.  *Id.*

Char commenced this lawsuit by signing the Complaint on November 16, 2023. *Id.* at PageID.25. The Court received the Complaint on November 22, 2023. *Id.* at PageID.1. In the Complaint, Char alleges that Defendants violated his Eighth Amendment rights by using excessive force (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III). *Id.* at PageID.12–PageID.22. Char also asserts a state law claim for intentional infliction of emotional distress (Count IV). *Id.* at PageID.23–PageID.24. Char seeks unspecified damages. *Id.* at PageID.25. The Court granted Char's Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 2, on November 28, 2023, ECF No. 4.

## III. <u>DISCUSSION</u>

### A. Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable to suit under 42 U.S.C. § 1983.  "First, plaintiffs may seek damages against a state official in his personal capacity."  *Cornel*, 37 F.4th at 531 (citing *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016)).  "Second, state officials are 'persons' under § 1983 when sued for prospective injunctive relief."  *Id*. (citation omitted).  This second situation applies "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective."  *Id.* (internal quotation marks and citation omitted).

## B.  Eleventh Amendment

Char names Defendants in both their individual and official capacities.  *See* ECF No. 1 at PageID.1–PageID.8.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)  Nor does it bar suits for damages

against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

To the extent Char seeks damages from Defendants in their official capacities, those claims are barred by the Eleventh Amendment and DISMISSED with prejudice.  *See Mitchell*, 818 F.3d at 442 ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)).  The Eleventh Amendment does not bar Char from seeking damages from Defendants in their personal capacities.  *See id.* (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities").  Char is also not precluded from seeking prospective injunctive relief for ongoing violations of federal law.  *See Cornel*, 37 F.4th at 531.

## C.  Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter,

and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (citations omitted).

### 1. Excessive Force

Char alleges in Count I that Sgt. Jefferson, CO Irvine, CO Duarte, and Sgt. Keopuhiwa used excessive force.  ECF No. 1 at PageID.12–PageID.15.

"In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The Ninth Circuit has identified the following five factors to consider when determining whether a use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028–29 (9th Cir. 2013) (internal quotation marks and citation omitted).

An officer who did not personally use excessive force may nonetheless be liable as an "integral participant" if the officer had "some fundamental involvement" in the use of excessive force. *Rosales v. County of Los Angeles*, 650 Fed. Appx. 546, 549 (9th Cir. 2016) (citations omitted).  Furthermore, "[o]fficers

can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers . . . if they had an opportunity to intercede." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quotation marks and citation omitted).

### a.  Sgt. Jefferson

Char alleges that Sgt. Jefferson opened his cell door on November 25, 2021, "aggressively" approached him, and knocked Char's cane out of his hand.  ECF No. 1 at PageID.13.  Sgt. Jefferson proceeded to "pummel" Char's head, neck, back, and shoulders.  *Id.*  Sgt. Jefferson attempted to strike Char in the chest three times with his knee.  *Id.*  When Char fell to the floor, Sgt. Jefferson attempted to break Char's leg by kicking and stomping on the side of his knee.  *Id.*  As Char tried to crawl away, Sgt. Jefferson kicked and shoved him from behind.  *Id.* Finally, when Char stood up and faced his cell door, Sgt. Jefferson "whipped" Char's cane at him, hitting Char in the head.  *Id.*  According to Char, Sgt. Jefferson's conduct was "unprovoked."  *Id.*  Char further asserts that he was not combative, threatening, and he did not resist.  *Id.* at PageID.14.  Based on these allegations, Char's excessive force claim against Sgt. Jefferson may proceed.

### b.  CO Irvine

Char alleges that CO Irvine picked up Char's cane during the incident, shouted encouraging words to Sgt. Jefferson, and egged on Sgt. Jefferson to "beat

[Char] up real good." *Id.*  Char's excessive force claim against CO Irvine may also proceed.

### c.  CO Duarte

Char alleges that CO Duarte stood by and watched as Sgt. Jefferson beat him.  *Id.*  This is not enough to state a claim against CO Duarte.  Char alleges no facts demonstrating some "fundamental involvement" in Sgt. Jefferson's use of force.  Char also has not plausibly alleged that CO Duarte had an "opportunity to intercede."  Although Char alleges that CO Duarte "stood by cell A-5," he does not say how far this was from where the incident took place.  *See Purnell v. Mora*, Case No. 1:19-cv-00210-DAD-BAM, 2020 WL 129094, at *5 (E.D. Cal. Jan. 10, 2020) ("It is not clear from the complaint whether the incident is alleged to have occurred . . . in close enough proximity to allow [the officers] a realistic opportunity to intercede.").  Char also does not say how long the incident lasted. *See id.* ("[G]iven the apparently short time period in which the incident is alleged to have taken place . . . it is not clear whether Plaintiff alleges that [the officers] had enough time to prevent the alleged violation.").  Char's excessive force claim against CO Duarte is therefore DISMISSED with leave granted to amend.

### d.  Sgt. Keopuhiwa

According to Char, during the early morning hours of November 26, 2021, Sgt. Keopuhiwa was getting Char ready for transport to the emergency room when

Sgt. Keopuhiwa used excessive force while handcuffing him.  ECF No. 1 at PageID.15.  Char alleges that he cried out in pain.  *Id.*  These allegations, without more, fail to state a plausible excessive force claim against Sgt. Keopuhiwa.  Nothing suggests that Sgt. Keopuhiwa handcuffed Char maliciously or sadistically to cause harm.  Char does not describe how Sgt. Keopuhiwa handcuffed him or how Sgt. Keopuhiwa reacted after he cried out.  *See LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force.").  Char's excessive force claim against Sgt. Keopuhiwa is DISMISSED with leave granted to amend.

### 2.  Threat to Safety

Char alleges in Count II that Warden Harrington, Deputy Warden Antonio, Joanna White, Cpt. Finau, Lt. Kaleikau, and Robin Matsunaga threatened his safety.  ECF No. 1 at PageID.16 –PageID.19.

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates."  *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).  A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation alleged must be objectively, sufficiently serious."  *Id.* at 834 (citations omitted).  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

harm." *Id.* (citation and footnote omitted).  Second, the plaintiff must show

deliberate indifference — that is, that "the [prison] official kn[ew] of and

disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837.  "[T]he official

must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### a. Warden Harrington and Deputy Warden Antonio

Char alleges that Sgt. Jefferson first "beat[] [him] up" on January 12, 2020.

ECF No. 1 at PageID.16.  After this incident, Char's attorney sent a letter to

Warden Harrington advising him to keep Sgt. Jefferson away from Char.  *Id.*  After

Sgt. Jefferson threatened Char on August 21, 2021, Char sent a letter both to

Warden Harrington and Deputy Warden Antonio on September 28, 2021.  *Id.* at

PageID.12.  In this letter, Char stated that Sgt. Jefferson had threatened to beat him

up again "real soon." *Id.* at PageID.16.  According to Char, Warden Harrington

and Deputy Warden Antonio "refused to keep [Sgt.] Jefferson away from [him]."

*Id.*

Based on these allegations, Char's threat-to-safety claims against Warden

Harrington and Deputy Warden Antonio may proceed.  *See Villegas v. Schulteis*,

No. 1:09-cv-00493-YNP PC, 2009 WL 3157519, at *4 (E.D. Cal. Sept. 28, 2009)

(allowing to proceed claims against chief deputy warden and associate warden who

14

were made aware of threat in inmate's safety but failed to take any steps to prevent further harassment).

### b.  Joanna White

Char alleges that White failed to keep Sgt. Jefferson away from him.  ECF No. 1 at PageID.18.  Char has not plausibly alleged, however, that White was deliberately indifferent to his safety.  Char does not say if he ever reported to White concerns about his safety, what he said in doing so, or how White responded.  To the extent Char alleges that his September 28, 2021 letter was forwarded to White, he does not say when this occurred or what actions White could have taken in response.  Char's claim against White is DISMISSED with leave granted to amend.

### c.  Cpt. Finau

Char alleges that Cpt. Finau failed to visit his cell on November 25, 2021, after Char had asked for him.  ECF No. 1 at PageID.18.  Char has not plausibly alleged that Cpt. Finau was deliberately indifferent to his safety.  On November 25 2021, CO Duarte called Cpt. Finau and conveyed to Char that Cpt. Finau was on his way.  *Id.* at PageID.13.  Char does not allege that Cpt. Finau had any reason to think that Char's safety was threatened.  According to the Complaint, Char asked for Cpt. Finau because he wanted to complain about CO Irvine's behavior, not because of any threat to his safety.  Thus, Char has not plausibly alleged that Cpt.

Finau knew of and disregarded an excessive risk to his safety.  Char's claim against Cpt. Finau is DISMISSED with leave granted to amend.

### d.  Lt. Kaleikau

Char alleges that Lt. Kaleikau was recording video while Sgt. Keopuhiwa handcuffed him during the early morning hours of November 26, 2021.  ECF No. 1 at PageID.15.  Char fails to allege, however, that Sgt. Keopuhiwa posed a substantial risk of serious harm.  Indeed, Char does not identify any past issues with Sgt. Keopuhiwa.  In addition, Char has not plausibly alleged that Lt. Lakeikau knew of and disregarded any excessive risk to his safety.  Thus, Char's claim against Lt. Kaleikau is DISMISSED with leave granted to amend.

### e.  Robin Matsunaga

Char alleges that he "notified" Matsunaga of Sgt. Jefferson's verbal threat on October 19, 2021.  *Id.* at PageID.19.  Char has not plausibly alleged that Matsunaga was deliberately indifferent to an excessive risk to his safety.  Char does not allege that he ever spoke with Matsunaga.  Thus, it is unclear if Matsunaga even knew that Char had called.  In addition, Char does not allege that Matsunaga knew about his earlier encounter with Sgt. Jefferson on January 12, 2020.  Thus, even assuming that Matsunaga knew about the August 21, 2021 threat from Sgt. Jefferson, nothing suggests that Matsunaga also knew that Sgt. Jefferson

might act on his threat.  Char's claim against Matsunaga is DISMISSED with leave granted to amend.

### 3.  Adequate Medical Care

Char alleges in Count III that Mandy Feldt, CO Moe, and Cpt. Vaovasa denied him adequate medical care.  ECF No. 1 at PageID.20 –PageID.22.

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (internal quotation marks and citations omitted).  "Serious medical needs can relate to physical, dental and mental health." *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original).  This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "An inadvertent or negligent failure

17

to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted). "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

### a. Mandy Feldt

Char alleges that Feldt cancelled a December 7, 2021 medical appointment. ECF No. 1 at PageID.20. Even assuming Char's knee injury amounted to a serious medical need, he has not plausibly alleged that Feldt acted with deliberate indifference to that need. To start, the reason for the December 7, 2021 medical appointment is unclear. Char does not say if the appointment was to see an orthopedic surgeon or something else. Moreover, Char does not allege that Feldt knew about the November 25, 2021 incident, his resulting injuries, the emergency room doctor's referral for a follow-up appointment with an orthopedic surgeon, or the reason for the December 7, 2021 appointment. To the extent that Feldt may have acted negligently in failing to return to Char's cell to take him to his medical appointment, that is not enough. *See Edmo*, 935 F.3d at 786. Char's claim against Feldt is DISMISSED with leave granted to amend.

### b. CO Moe

According to Char, he returned from the emergency room with a knee brace. ECF No. 1 at PageID.21.  When Char moved into the medium SHU on December 9, 2021, however, CO Moe confiscated the knee brace telling Char that he could not have it.  *Id.*  Again, Char has not plausibly alleged that CO Moe was deliberately indifferent to a serious medical need.  Char does not allege that he ever explained to CO Moe why he needed a knee brace or how CO Moe responded when he did so.  The fact that a prison official confiscates an inmate's knee brace, without more, is insufficient to state an Eighth Amendment claim.  *See Lau v. Kekuaokalani*, Civ. No. 17-00258 JMS-KSC, 2017 WL 3187216, at *4–5 (D. Haw. July 25, 2017) (dismissing claim based on confiscation of knee brace).  Char's claim against CO Moe is DISMISSED with leave granted to amend.

### c. Cpt. Vaovasa

Char alleges that prison officials gave him a cane for his "disability" on July 13, 2020.  ECF No. 1 at PageID.22.  On November 27, 2021, Cpt. Vaovasa confiscated Char's new cane when he moved into the medium SHU.  *Id.*  Char told Cpt. Vaovasa that he was given a "medical needs memo" on February 2, 2018, that granted his indefinite use of a cane.  *Id.*

At this point, Char has not plausibly identified a serious medical need. Although Char refers to a "disability," he does not say what it is.  Char does not

19

say if a cane was necessary for him to ambulate.  It is also not clear if Char's need for the cane changed over time, and Char does not allege that the November 25, 2021 incident increased his need for a cane.  If Char's need for a cane increased because of injuries sustained during the November 25, 2021 incident, nothing in the Complaint suggests that he informed Cpt. Vaovasa of this fact.  Char's claims against Cpt. Vaovasa is DISMISSED with leave granted to amend.

## D. Policies and Procedures

At various points in Counts I through III, Char alleges that Defendants' conduct violated certain provisions of the Hawaii Revised Statutes and policies and procedures of the Hawaii Department of Public Safety.  *See* ECF No. 1 at PageID.14–PageID.15, PageID.17–PageID.19, PageID.21–PageID.22.  Section 1983 provides a cause of action only for violations of federal law.  Thus, Char cannot rely on purported violations of state policies and statutes in seeking relief under 42 U.S.C. § 1983.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (noting that "state departmental regulations do not establish a federal constitutional violation"); *see also De Cambra v. Sakai*, Civ. No. 14-00279 DKW-BMK, 2014 WL 3108002, at *6 (D. Haw. July 7, 2014) ("Violations of state prison rules and regulations, without more, do not support claims under § 1983.").

### E.  Intentional Infliction of Emotional Distress

Char alleges in Count IV that Sgt. Jefferson should be liable for intentional infliction of emotional distress.  ECF No. 1 at PageID.23–PageID.24.  The Court liberally construes this claim as being brought under state law.

"Under Hawaii law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"  *Enoka v. AIG Haw. Ins. Co.*, 128 P.3d 850, 872 (2006) (quoting *Hac v. Univ. of Haw.*, 73 P.3d 46, 60–61 (2003)).  "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  *Id.* (quoting *Lee v. Aiu*, 936 P.2d 655, 670 n.12 (1997)).

As already noted, Char alleges that Sgt. Jefferson "maliciously [and] sadistically attacked [him] with no provocation."  ECF No. 1 at PageID.23.  During the incident, Sgt. Jefferson "pummel[ed]" Char's head, neck, back, and shoulders.  *Id.* at PageID.13.  Sgt. Jefferson attempted three times to strike with his knee Char in the chest.  *Id.*  After Char fell to the floor, Sgt. Jefferson attempted to break Char's leg by kicking and stomping on his knee.  *Id.*  When Char attempted to crawl away, Sgt. Jefferson kicked and shoved Char from behind.  After Char got to his feet and turned around, Sgt. Jefferson "whipped" Char's cane at him, hitting Char in the head.  *Id.*  During the incident, Char was not combative or threatening,

and he did not resist.  *Id.* at PageID.14.  The incident caused Char "emotional distress, mental anguish, harm, embarrassment, humiliation, misery, fear, worry, [and] anger."  *Id.*  Based on these allegations, Char's intentional infliction of emotional distress claim against Sgt. Jefferson may proceed.

## IV.  CONCLUSION

(1)  Char's excessive force claims in Count I against Sgt. Jefferson and CO Irvine, his threat to safety claims in Count II against Warden Harrington and Deputy Warden Antonio, and his intentional infliction of emotional distress claim in Count IV against Sgt. Jefferson may proceed.

(2)  Char's remaining claims are DISMISSED for the reasons set forth above.

(3)  Char may file an amended pleading that attempts to cure the noted deficiencies in those claims dismissed with leave granted to amend, if possible, on or before **January 11, 2024**.

(4)  If he chooses to file an amended pleading, Char must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will

supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(5)  IN THE ALTERNATIVE, Char may notify the court in writing on or before **January 11, 2024**, that he elects to proceed with his excessive force claims against Sgt. Jefferson and CO Irvine, his threat to safety claims against Warden Harrington and Deputy Warden Antonio, and his intentional infliction of emotional distress claims against Sgt. Jefferson, and these claims shall be served.  Proceeding on these claims does not preclude Char from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders of this court.  If Char fails to file either an amended pleading or a notice of election, the court will direct that the Complaint be served as limited by this Order.

(6)  The Clerk is DIRECTED to send Char a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 12, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARK ALAN CHAR VS. MICHAEL JEFFERSON; _et al._; CV 23-00474 LEK-KJM; ORDER DISMISSING IN PART PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND**