IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK ALAN CHAR, #A0234438,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JEFFERSON; *et al.*,<br><br>Defendants. | CIVIL NO. 23-00474 LEK-KJM<br><br>ORDER: (1) DISMISSING IN PART FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND; AND (2) DENYING MOTION FOR APPOINTMENT OF COUNSEL |

## ORDER: (1) DISMISSING IN PART FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND; AND (2) DENYING MOTION FOR APPOINTMENT OF COUNSEL

Before the Court is pro se Plaintiff Mark Alan Char's ("Char") First Amended Prisoner Civil Rights Complaint ("FAC"), ECF No. 8, and his Motion for Appointment of Counsel, ECF No. 9.  In the FAC, Char alleges that various prison officials[1] violated the Eighth Amendment's prohibition against cruel and unusual punishment by using excessive force (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III) during his

---

[1] Char names as defendants in both their individual and official capacities Sergeant ("Sgt.") Michael Jefferson, Corrections Officer ("CO") Casey Irvine, CO Fia Duarte, Warden Scott Harrington, Deputy Warden Lyle Antonio, Captain ("Cpt.") Joanna White, Ombudsman Robin Matsunaga, CO Calvin Mock, Jr., Warden Shannon Cluney, Nurse Mandy Feldt, Cpt. Edward Vaovasa, CO Vince Moe, Dr. Deana Hatakeyama, Dr. Maura Tresch, Nurse Romey Glidewell, and Sgt. Michael Keopuhiwa, Jr.  ECF No. 8 at PageID.64–PageID.69.

incarceration at the Halawa Correctional Facility ("HCF"), a state prison.[2]  ECF No. 8 at PageID.73–PageID.94.  Char also asserts an intentional infliction of emotion distress claim under state law (Count IV), he alleges that prison officials retaliated against him (Count V), and he alleges that a prison official robbed him (Count VI).  *Id.* at PageID.95–PageID103.

After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the FAC in part and with partial leave granted to amend.  Char states plausible excessive force claims against Sgt. Jefferson, CO Irvine, and CO Duarte; threat to safety claims against Warden Harrington, Deputy Warden Antonio, Cpt. White, and CO Mock; and an intentional infliction of emotional distress claim against Sgt. Jefferson.  Char may file an amended pleading that cures the noted deficiencies in those claims dismissed with leave granted to amend on or before **March 29, 2024**.  In the alternative, Char may notify the Court in writing on or before **March 29, 2024**, that he wants to proceed only with his excessive force claims against Sgt. Jefferson, CO Irvine, and CO Duarte; his threat to safety claims against Warden Harrington, Deputy Warden Antonio, Cpt. White, and CO Mock; and his

---

[2] Char is currently incarcerated at the HCF.  *See* ECF No. 8 at PageID.64; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0234438"; and select "Search") (last visited Feb. 28, 2024).

intentional infliction of emotional distress claim against Sgt. Jefferson; and those claims shall be served.

Char's Motion for Appointment of Counsel, ECF No. 9, is DENIED without prejudice.

## I. **STATUTORY SCREENING**

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants'
pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338,
342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it
appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d
at 1130.  When a claim cannot be saved by amendment, however, dismissal with
prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d
1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[3]

On January 12, 2020, Sgt. Jefferson "beat[] up" Char.  ECF No. 8 at
PageID.77.  After the incident, Char's attorney sent a January 15, 2020 letter to
Warden Harrington stating that Sgt. Jefferson should be kept away from Char for
Char's "safety [and] well-being."  *Id.*  According to Char, Warden Harrington
disregarded the letter.  *Id.*

On August 21, 2021, Sgt. Jefferson told Char that he was "going to beat him
up again real soon."  *Id.* at PageID.73.  On September 28, 2021, Char sent a letter
to Warden Harrington and Deputy Warden Antonio describing what Sgt. Jefferson
had said.  *Id.* at PageID.77.  According to Char, Warden Harrington and Deputy
Warden Antonio "refused to keep [Sgt.] Jefferson away from [him]."  *Id.*  Char

---

[3] Char's factual allegations are accepted as true for purposes of screening.  *See
Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

alleges that White and Mock also read his letter.  *Id.* at PageID.79–PageID.80,

PageID.82 –PageID.83.  Char also called Matsunaga on October 19, 2021, saying

that Sgt. Jefferson had threatened him.  *Id.* at PageID.80.  Matsunaga did not

investigate Char's claims or respond to his call.  *Id.*

      On November 25, 2021, Char asked CO Duarte to call Cpt. Finau because

Char wanted to report mistreatment by CO Irvine.  *Id.* at PageID.73.  Instead of

Cpt. Finau, Sgt. Jefferson came to Char's cell.  *Id.*  Sgt. Jefferson said that Char

must speak with him before Cpt. Finau.  *Id.*  Char told Sgt. Jefferson about CO

Irvine's actions, but Sgt. Jefferson refused to call Cpt. Finau.  *Id.*  CO Duarte

eventually told Char that he had called Cpt. Finau.  *Id.* at PageID.74.

      While Char was waiting for Cpt. Finau to arrive, Sgt. Jefferson opened the

door to Char's cell.  *Id.*  Confident that Sgt. Jefferson was going to beat him up,

Char stepped out of his cell hoping that two nearby video cameras would capture

whatever happened next.  *Id.*  Sgt. Jefferson aggressively approached Char,

knocked Char's cane out of his hand, and proceeded to "pummel" Char's head,

neck, back, and shoulders.  *Id.*  Sgt. Jefferson tried three times to strike Char in the

chest with his knee.  *Id.*  When Char fell to the floor, Sgt. Jefferson attempted to

break Char's leg by kicking and stomping on the side of his knee.  *Id.*  Char tried to

crawl away, but Sgt. Jefferson kicked and shoved him from behind.  *Id.*  When

Char got up from the floor and turned to face the door of his cell, Sgt. Jefferson

"whipped" Char's cane at him, hitting Char in the head. *Id.* During the incident, CO Irvine encouraged Sgt. Jefferson "to beat [Char] up real good." *Id.* CO Duarte stood by and did nothing. *Id.* Another sergeant later told Char that a video recording of the incident confirmed that Sgt. Jefferson's actions were unprovoked. *Id.*

During the early morning hours of November 26, 2021, Char was taken to the emergency room at the Queen's Medical Center. *Id.* at PageID.85. An emergency room doctor referred Char to see an orthopedic surgeon within seven days for an MRI on his knee. *Id.* On December 7, 2021, Char was told that he had a medical appointment. *Id.* at PageID.86. Char asked for some time to get ready and use the restroom. *Id.* Feldt "charg[ed]" into Char's cell, "raging mad." *Id.* Feldt found Char sitting on the toilet, and she yelled at him to get off. *Id.* at PageID.86–PageID.87. Char told Feldt that he would alert her when he was done. *Id.* at PageID.87. Several minutes later, Char asked someone to inform Feldt that he was ready. *Id.* Feldt never returned to Char's cell; she had cancelled his appointment. *Id.*

While at the hospital, Char received a knee brace. *Id.* at PageID.85. On December 9, 2021, just before Char moved back into the "medium SHU," CO Moe took the knee brace saying that Char could not have it. *Id.* at PageID.87.

Char also returned from the hospital with a new cane.  *Id.* at PageID.85.  On November 27, 2021, Cpt. Vaovasa came to Char's cell and instructed him to turn over his new cane because he could not have it.  *Id.* at PageID.89.  Char refused. *Id.*  According to Char, he had a February 2, 2018 "medical needs memo" allowing his indefinite use of a cane.  *Id.*  Cpt. Vaovasa threatened and intimidated Char.  *Id.* Fearing for his safety, Char handed over the cane, and Cpt. Vaovasa gave him a walker.  *Id.*

Char commenced this lawsuit by signing the original Complaint on November 16, 2023.  ECF No. 1 at PageID.25.  The Court received the Complaint on November 22, 2023.  *Id.* at PageID.1.  In the Complaint, Char alleged that certain prison officials violated his Eighth Amendment rights by using excessive force, threatening his safety, and denying him adequate medical care.  *Id.* at PageID.12–PageID.22.  Char also asserted a state law claim for intentional infliction of emotional distress (Count IV).  *Id.* at PageID.23–PageID.24.

The Court granted Char's Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 2, on November 28, 2023, ECF No. 4.  On December 12, 2023, the Court issued an Order Dismissing in Part Prisoner Civil Rights Complaint with Partial Leave Granted to Amend.  ECF No. 5.  The Court concluded that Char had stated plausible excessive force claims against Sgt. Jefferson and CO Irvine, threat to safety claims against Warden Harrington and Deputy Warden Antonio, and an

intentional infliction of emotional distress claims against Sgt. Jefferson.  *Id.* at

PageID.58.  The Court instructed Char to file an amended pleading curing the

deficiencies in his remaining claims on or before January 11, 2024.  *Id.*  The Court

received the FAC on February 8, 2024.  ECF No. 8.

### III.  <u>DISCUSSION</u>

### A.  Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under

color of' law deprives another of 'rights, privileges, or immunities secured by the

Constitution.'"  *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting

42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C.

§ 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws

of the United States was violated; and (2) that the alleged violation was committed

by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

(1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable to suit under

42 U.S.C. § 1983.  "First, plaintiffs may seek damages against a state official in his

personal capacity."  *Cornel*, 37 F.4th at 531 (citing *Mitchell v. Washington*, 818

F.3d 436, 442 (9th Cir. 2016)).  "Second, state officials are 'persons' under § 1983

when sued for prospective injunctive relief."  *Id*. (citation omitted).  This second

situation applies "where a plaintiff alleges an ongoing violation of federal law, and

where the relief sought is prospective rather than retrospective." *Id.* (internal

quotation marks and citation omitted).

## B. Eleventh Amendment

Char names Defendants in both their individual and official capacities. *See*

ECF No. 8 at PageID.64–PageID.69.

"The Eleventh Amendment bars suits for money damages in federal court

against a state, its agencies, and state officials acting in their official capacities."

*Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation

omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03

(1984).  It does not bar official-capacity suits against state officials for prospective

relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v.*

*Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages

against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21,

30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

To the extent Char seeks damages from Defendants in their official

capacities, those claims are barred by the Eleventh Amendment and DISMISSED

with prejudice.  *See Mitchell*, 818 F.3d at 442 ("The Eleventh Amendment bars

claims for damages against a state official acting in his or her official capacity."

(citation omitted)).  The Eleventh Amendment does not bar Char from seeking

9

damages from Defendants in their personal capacities.  *See id.* (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities").  Char is also not precluded from seeking prospective injunctive relief for ongoing violations of federal law.  *See Cornel*, 37 F.4th at 531.

## C.  Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Id.* (citations omitted).

### 1.  Excessive Force

Char alleges in Count I that Sgt. Jefferson, CO Irvine, and CO Duarte used excessive force during the November 25, 2021 incident.  ECF No. 8 at PageID.73–aPageID.76.

"In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  The Ninth Circuit has identified the following five factors to consider when determining whether a use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028–29 (9th Cir. 2013) (internal quotation marks and citation omitted).

An officer who did not personally use excessive force may nonetheless be liable as an "integral participant" if the officer had "some fundamental involvement" in the use of excessive force. *Rosales v. County of Los Angeles*, 650 Fed. Appx. 546, 549 (9th Cir. 2016) (citations omitted).  Furthermore, "[o]fficers can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers . . . if they had an opportunity to intercede." *Hughes*, 31 F.4th at 1223 (quotation marks and citation omitted).

### a.  Sgt. Jefferson

Char alleges that Sgt. Jefferson opened his cell door on November 25, 2021, "aggressively" approached him, and knocked Char's cane out of his hand.  ECF No. 8 at PageID.74.  Sgt. Jefferson proceeded to "pummel" Char's head, neck,

11

back, and shoulders.  *Id.*  Sgt. Jefferson attempted to strike Char in the chest three times with his knee.  *Id.*  When Char fell to the floor, Sgt. Jefferson attempted to break Char's leg by kicking and stomping on the side of his knee.  *Id.*  As Char tried to crawl away, Sgt. Jefferson kicked and shoved him from behind.  *Id.*  Finally, when Char stood up and faced his cell door, Sgt. Jefferson "whipped" Char's cane at him, hitting Char in the head.  *Id.*  According to Char, Sgt. Jefferson's conduct was "unprovoked."  *Id.*  Char further asserts that he was not combative, threatening, and he did not resist.  *Id.* at PageID.75.  Based on these allegations, Char's excessive force claim against Sgt. Jefferson may proceed.

### b.  CO Irvine

Char alleges that CO Irvine picked up Char's cane during the incident, shouted encouraging words to Sgt. Jefferson, and egged on Sgt. Jefferson to "beat up Char real good."  *Id.* at PageID.74.  Char's excessive force claim against CO Irvine can also proceed.

### c.  CO Duarte

Char alleges that CO Duarte stood immediately behind Sgt. Jefferson during the incident.  *Id.* at PageID.76.  According to Char, CO Duarte had an opportunity to stop Sgt. Jefferson, but he failed to do so.  *Id.*  Instead, CO Duarte walked to a nearby cell and watched Char get beaten up.  *Id.*  Char's claim against CO Duarte may proceed.

## 2.  Threat to Safety

Char alleges in Count II that Warden Harrington, Deputy Warden Antonio, Cpt. White, Robin Matsunaga, CO Mock, Jr., and Warden Cluney threatened his safety.  ECF No. 8 at PageID.77–PageID.84.

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).  A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation alleged must be objectively, sufficiently serious." *Id.* at 834 (citations omitted).  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and footnote omitted).  Second, the plaintiff must show deliberate indifference — that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### a.  Warden Harrington and Deputy Warden Antonio

Char alleges that Sgt. Jefferson first "beat[] [him] up" on January 12, 2020. ECF No. 8 at PageID.77.  After this incident, Char's attorney sent a letter to Warden Harrington advising him to keep Sgt. Jefferson away from Char.  *Id.*  After

13

Sgt. Jefferson threatened Char on August 21, 2021, Char sent a letter both to Warden Harrington and Deputy Warden Antonio on September 28, 2021.  *Id.*  In this letter, Char stated that Sgt. Jefferson had threatened to beat him up again "real soon."  *Id.* According to Char, Warden Harrington and Deputy Warden Antonio "refused to keep [Sgt.] Jefferson away from [him]."  *Id.*

Based on these allegations, Char's threat-to-safety claims against Warden Harrington and Deputy Warden Antonio may proceed.  *See Villegas v. Schulteis*, No. 1:09-cv-00493-YNP PC, 2009 WL 3157519, at *4 (E.D. Cal. Sept. 28, 2009) (allowing to proceed claims against chief deputy warden and associate warden who were made aware of threat in inmate's safety but failed to take any steps to prevent further harassment).

### b.  Cpt. White and CO Mock, Jr.

Char alleges that Cpt. White was responsible for "managing the medium SHU," and CO Mock, Jr. was the chief of security, when the November 25, 2021 incident occurred.  ECF No. 8 at PageID.79, PageID.82.  According to Char, prior to the incident, both Cpt. White and CO Mock, Jr. read his September 28, 2021 letter detailing the threats that Sgt. Jefferson had made, but they did nothing to protect him.  *Id*. at PageID.79, PageID.82.  Char's threat-to safety claims against Cpt. White and CO Mock, Jr. may proceed.

### c. Robin Matsunaga

Char alleges that he "notified" Matsunaga by phone of Sgt. Jefferson's verbal threat on October 19, 2021. *Id.* at PageID.80–PageID.81. Char has not plausibly alleged that Matsunaga was deliberately indifferent to an excessive risk to his safety. Char does not allege that he actually spoke with Matsunaga. Thus, it is unclear if Matsunaga even knew that Char had called. In addition, Char does not allege that Matsunaga knew about his earlier encounter with Sgt. Jefferson on January 12, 2020. Thus, even assuming that Matsunaga knew about the August 21, 2021 threat from Sgt. Jefferson, nothing suggests that Matsunaga also knew that Sgt. Jefferson might act on his threat. Finally, Char has not plausibly alleged that Matsunaga had any authority to change the conditions of his confinement at the HCF. Char's claim against Matsunaga is DISMISSED with leave granted to amend.

### d. Warden Cluney

Char alleges that Warden Cluney introduced himself to the inmates housed in the medium SHU as the new warden of the HCF on January 27, 2023. *Id.* at PageID.83. At some point, Char asked Warden Cluney to keep Char's "abusers" away from him. *Id.* Char also gave Warden Cluney various letters that he previously submitted to prison officials. *Id.*

Char does not allege, however, that Warden Cluney had any involvement in the November 25, 2021 incident.  To the extent Char alleges that he had thirty-eight encounters with Sgt. Jefferson between January 19, 2023, and June 22, 2023, *id.* at PageID.84, Char does not allege that he ever complained to Warden Cluney about these encounters or that anything happened during these encounters.  Indeed, Char does not allege that he had any issues with Sgt. Jefferson after the November 25, 2021 incident.  Thus, Char has not plausibly alleged that Warden Cluney knew of and disregarded an excessive risk to his safety.  Char's claim against Warden Cluney is DISMISSED with leave granted to amend.

### 3.  Adequate Medical Care

Char alleges in Count III that Mandy Feldt, Cpt. Vaovasa, CO Moe, Dr. Hatakeyama, Dr. Tresch, and Nurse Glidewell denied him adequate medical care. ECF No. 8 at PageID.85–PageID.94.

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Id.* at 785 (internal quotation marks and citations

16

omitted).  "Serious medical needs can relate to physical, dental and mental health."  *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health."  *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original).  This is a "high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment."  *Edmo*, 935 F.3d at 786 (citation omitted).  "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.* (internal quotation marks and citation omitted) (alteration in original).

### a. Mandy Feldt

Char alleges that Feldt cancelled a December 7, 2021 medical appointment with an orthopedic surgeon for his knee.  ECF No. 8 at PageID.86, PageID.88.  According to Char, his injured knee caused him severe pain and discomfort.  *Id.*  Even assuming Char's knee injury amounted to a serious medical need, *see Orcasitas v. Ko*, Case No. 21-cv-143-MMA (RBB), 2021 WL 4942681, at *3 (S.D. Cal. Oct. 22, 2021) (concluding that knee injury causing severe pain, among other

17

things, was a serious medical need), he has not plausibly alleged that Feldt acted with deliberate indifference to that need.  Char does not allege that Feldt knew about the November 25, 2021 incident, his resulting injuries, the pain that Char was experiencing, or the purpose of the December 7 appointment.  At one point, Char alleges that he submitted fourteen grievances against Feldt, *id.* at PageID.86, but he does not describe the contents of those grievances, nor does he allege that the grievances related in any way to the November 25, 2021 incident or the resulting injuries from that incident.  To the extent that Feldt may have acted negligently in cancelling Char's appointment, that is not enough.  See *Edmo*, 935 F.3d at 786.  Char's claim against Feldt is DISMISSED with leave granted to amend.

### b.  Cpt. Vaovasa

Char alleges that prison officials originally gave him a cane for his "disability" on July 13, 2020.  ECF No. 8 at PageID.86.  Char returned this cane to prison officials after he received a new cane in the emergency room on November 26, 2021.  *Id.* at PageID.85–PageID.86.  On November 27, 2021, Cpt. Vaovasa confiscated the new cane and gave him a walker.  *Id.* at PageID.89.

Char has plausibly identified a serious medical need.  According to Char, he had a February 2, 2018 "medical needs memo" that authorized his indefinite use of

a cane.  *Id.* at PageID.89.  A doctor also prescribed Char's use of a cane on July 13, 2020.  *Id.* at PageID.86.

Char has not alleged facts, however, showing that Cpt. Vaovasa was deliberately indifferent to his medical needs.  Although Cpt. Vaovasa told Char that he could not keep his cane, he did offer Char a walker.  *Id.* at PageID.89. Indeed, when Char handed over his cane, Cpt. Vaovasa gave him a walker.  *Id.* While Char may have preferred using a cane, he has not plausibly alleged that Cpt. Vaovasa acted with deliberate indifference.  Char's claim against Cpt. Vaovasa is DISMISSED with leave granted to amend.

### c. CO Moe

According to Char, he returned from the emergency room with a knee brace. ECF No. 8 at PageID.85.  When Char moved into the medium SHU on December 9, 2021, however, CO Moe confiscated the knee brace telling Char that he could not have it.  *Id.* at PageID.90.  When Char explained to CO Moe that he needed the brace to support his injured knee, CO Moe repeated that Char could not have it.  *Id.*

Again, Char has not plausibly alleged that CO Moe was deliberately indifferent to a serious medical need.  The alleged facts show that CO Moe took Char's knee brace because he believed that Char was not allowed to have it, not out of deliberate indifference to Char's medical needs.  *See Thompson v. California*, No. 1:07-cv-1299-LJO-GSA (PC), 2009 WL 62140, at *5 (E.D. Cal.

19

Jan. 8, 2009) (dismissing Eighth Amendment claim where prison official took medically required knee brace based on belief that inmate did not need it).  The fact that a prison official confiscates an inmate's knee brace, without more, is insufficient to state an Eighth Amendment claim.  *See Lau v. Kekuaokalani*, Civ. No. 17-00258 JMS-KSC, 2017 WL 3187216, at *4–5 (D. Haw. July 25, 2017) (dismissing claim based on confiscation of knee brace).  Char's claim against CO Moe is DISMISSED with leave granted to amend.

### d.  Dr. Hatakeyama

Char alleges that Dr. Hatakeyama violated a February 2, 2018 "medical needs memo" that allowed Char to have a cane.  ECF No. 8 at PageID.91.  Char received a cane on July 13, 2020.  *Id.*  Cpt. Vaovasa confiscated that cane on November 27, 2021.  *Id.*  Beginning on December 13, 2021, Char submitted approximately twenty "medical request[s]" asking Dr. Hatakeyama to return to him the confiscated cane.  *Id.* at PageID.92.

Assuming Char had a serious medical need, he has not alleged facts showing that Dr. Hatakeyama acted with deliberate indifference to that need.  For example, Char does not allege that Dr. Hatakeyama issued the February 2, 2018 medical needs memo, nor does Char allege that Dr. Hatakeyama knew that Char did not receive a cane until July 13, 2020.  Other than a conclusory allegation that Dr. Hatakeyama "allowed" Cpt. Vaovasa to confiscate the cane on November 27,

2021, Char alleges no facts showing that Dr. Hatakeyama instructed Cpt. Vaovasa to take the cane.  In addition, to the extent Char alleges that he complained to Dr. Hatakeyama that he wanted his cane returned, Char acknowledges that Cpt. Vaovasa provided him with a walker.  Char does not allege that he ever explained to Dr. Hatakeyama why the walker was inadequate or how Dr. Hatakeyama responded.  In short, Char alleges no facts showing deliberate indifference by Dr. Hatakeyama.  Char's claim against Dr. Hatakeyama is DISMISSED with leave granted to amend.

### e.  Dr. Tresch

Char alleges that beginning on November 16, 2022, he submitted to Dr. Tresch three medical requests asking for the return of his cane.  ECF No. 8 at PageID.92.

Once more, Char fails to allege facts showing that Dr. Tresch acted with deliberate indifference.  As already noted, Char acknowledges that Cpt. Vaovasa provided a walker to him upon confiscating his cane.  Char does not say if he still had use of the walker when he wrote to Dr. Tresch, nor does Char allege that he explained to Dr. Tresch why the walker was inadequate.  Although Char alleges that Dr. Tresch "refused" his request, Char does not describe what Dr. Tresch said in doing so.  Thus, it is unclear what Dr. Tresch knew, when she knew it, and how

that information shaped her response to Char's requests.  Char's claim against Dr. Tresch is therefore DISMISSED with leave granted to amend prejudice.

### f. Nurse Glidewell

Char alleges that he submitted to Nurse Glidewell a May 16, 2023 request seeking the return of his cane.  ECF No. 8 at PageID.93.

Char also fails to allege facts showing that Nurse Glidewell acted with deliberate indifference to a serious medical need.  Again, Char acknowledges that he had use of a walker after his cane was confiscated.  Char does not allege that he explained to Nurse Glidewell why a walker was inadequate.  Nor does Char allege other facts showing that Nurse Glidewell acted with deliberate indifference.  Char's claim against Nurse Glidewell is DISMISSED with leave granted to amend.

## D.  First Amendment -- Retaliation

Char alleges in Count V that Feldt, Dr. Hatakeyama, Sgt. Keopuhiwa, and Cpt. Vaovasa retaliated against him.  ECF No. 8 at PageID.97–PageID.101.

"The First Amendment forbids government officials from retaliating against individuals for speaking out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).   A viable First Amendment retaliation claim in the prison context requires: (1) an assertion that a state actor took some adverse action against a prisoner; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the prisoner's exercise of his First Amendment rights; and (5) the action

did not reasonably advance a legitimate correctional goal.  *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021).

### 1.  Mandy Feldt

Char alleges that Feldt took various adverse actions against him.  These include denying his use of a cane, refusing him glasses, cancelling his use of a wheelchair, and cancelling his December 7, 2021 appointment.  ECF No. 8 at PageID.98.  Char also alleges that he engaged in protected conduct by filing fourteen grievances against Feldt.  *Id.*; *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("The filing of an inmate grievance is protected conduct.").

Char has not alleged, however, facts showing that Feldt took any adverse action *because of* his protected conduct.  *See Hatcher v. Harrington*, No. 14-00554 JMS/KSC, 2015 WL 474313, at *6 (D. Haw. Feb. 5, 2015) ("A plaintiff must also allege facts sufficient to demonstrate a nexus between the alleged adverse action and the plaintiff's protected speech.").  Char does not describe the contents of his various grievances, he does not say when they were filed, nor does he otherwise allege any facts showing any connection between those grievances and actions taken by Feldt.  In addition, Char alleges no facts showing that the exercise of his First Amendment rights was chilled by Feldt's actions.  Char's First Amendment claim against Feldt is DISMISSED with leave granted to amend.

### 2. Dr. Hatakeyama

Char alleges that Dr. Hatakeyama cancelled various medications, including prenatal vitamins, simethicone, and arthritis pain creams. ECF No. 8 at PageID.98. Char further alleges that Dr. Hatakeyama allowed Feldt to cancel his December 7, 2021 appointment. *Id.* at PageID.98–PageID.99. According to Char, he filed ten grievances against Dr. Hatakeyama, and he submitted twenty-seven medical requests asking to have an appointment scheduled. *Id.*

Char has not alleged facts showing that Dr. Hatakeyama took any adverse action against him on account of his various grievances. Char does not provide the relative timing of his grievances and the complained-of conduct. Nor does Char allege any other facts showing a connection between his grievances and Dr. Hatakeyama's conduct. In addition, Char again fails to allege facts showing that his First Amendment rights were somehow chilled because of Dr. Hatakeyama's actions. Char's First Amendment claim against Dr. Hatakeyama is DISMISSED with leave granted to amend.

### 3. Sgt. Keopuhiwa

Char alleges that Sgt. Keopuhiwa came to his cell on November 27, 2021, to confiscate his cane. ECF No. 8 at PageID.99. Char alleges that this occurred after he complained to the Sheriff's Department about the actions Sgt. Jefferson, CO Irvine, and CO Duarte. *Id.* According to Char, Sgt. Keopuhiwa became upset after

Char refused to turn over his cane.  *Id.*  Sgt. Keopuhiwa swore at Char, called him names, and threatened him.  *Id.*  Sgt. Keopuhiwa then punched the window as he walked out of Char's cell.  *Id.*

Even if threats can constitute an adverse action, *see Gleason v. Franklin*, No. CV 15-08380-CBM (DFM), 2021 WL 2549070, at *5 (C.D. Cal. May 19, 2021), Char fails to allege facts showing a nexus between his grievances and the threats. Instead, it appears that Sgt. Keopuhiwa threatened Char only after Char refused to hand over his cane.  In addition, Char alleges no facts showing that Sgt. Keopuhiwa's conduct chilled his speech.  Char's First Amendment claim against Sgt. Keopuhiwa is DISMISSED with leave granted to amend.

### 4. Cpt. Vaovasa

Char alleges that Cpt. Vaovasa retaliated against him by confiscating his cane on November 27, 2021.  *See* ECF No. 8 at PageID.100 –PageID.101; *see also id.* at PageID.89.  Char fails to identify, however, any protected conduct.  He also fails to allege any facts showing that Cpt. Vaovasa confiscated his cane because of that protected conduct.  Finally, Char does not allege that the exercise of his First Amendment rights was chilled in any way by Cpt. Vaovasa's actions.  Char's First Amendment claim against Cpt. Vaovasa is therefore DISMISSED with leave granted to amend.

## E.  Intentional Infliction of Emotional Distress

Char alleges in Count IV that Sgt. Jefferson should be liable for intentional infliction of emotional distress.  ECF No. 8 at PageID.95–PageID.96.  The Court liberally construes this claim as being brought under state law.

"Under Hawaii law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"  *Enoka v. AIG Haw. Ins. Co.*, 128 P.3d 850, 872 (2006) (quoting *Hac v. Univ. of Haw.*, 73 P.3d 46, 60–61 (2003)).  "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  *Id.* (quoting *Lee v. Aiu*, 936 P.2d 655, 670 n.12 (1997)).

Char alleges that Sgt. Jefferson "maliciously [and] sadistically attacked [him] with no provocation."  ECF No. 8 at PageID.95.  During the incident, Sgt. Jefferson "pummel[ed]" Char's head, neck, back, and shoulders.  *Id.* at PageID.74.  Sgt. Jefferson attempted three times to strike with his knee Char in the chest.  *Id.*  After Char fell to the floor, Sgt. Jefferson attempted to break Char's leg by kicking and stomping on his knee.  *Id.*  When Char attempted to crawl away, Sgt. Jefferson kicked and shoved Char from behind.  After Char got to his feet and turned around, Sgt. Jefferson "whipped" Char's cane at him, hitting Char in the head.  *Id.*  During the incident, Char was not combative or threatening, and he did not resist.  *Id.* at

26

PageID.75.  The incident caused Char "emotional distress, mental anguish, harm, embarrassment, humiliation, misery, fear, worry, [and] anger."  *Id.*  Based on these allegations, Char's intentional infliction of emotional distress claim against Sgt. Jefferson may proceed.

## F.  Robbery

Char alleges in Count VI that Cpt. Vaovasa committed the crime of robbery. ECF No. 8 at PageID.102–PageID.103.

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'"  *Cornel*, 37 F.4th at 531 (quoting 42 U.S.C. § 1983) (alteration in original).  Section 1983 "does not allow a private citizen to bring a criminal prosecution against another citizen."  *Bertram v. Sizelove*, No. 1:10-cv-00583-AWI-GBC (PC), 2012 WL 5207580, at *2 n.2 (E.D. Cal. Oct. 22, 2012), *report and recommendation adopted*, No. 1:10-cv-00583-AWI-DLB, 2013 WL 1402338 (E.D. Cal. Apr. 5, 2013); *see also Harper v. Cisneros*, No. 1:22-cv-00290-SAB (PC), 2022 WL 1205427, at *1 (E.D. Cal. Mar. 25, 2022) ("Plaintiff cannot bring a criminal action under § 1983 against Defendants for violation of [state law]."), *reconsideration denied*, No. 1:22-cv-0290-JLT-SAB (PC), 2022 WL 1204810 (E.D. Cal. Apr. 22, 2022).  Char's robbery claim in Count VI is therefore DISMISSED with prejudice.

## G.  Motion to Appoint Counsel

Char moves the Court to appoint counsel.  ECF No. 9.

There is no constitutional right to counsel in a civil case where, as here, a litigant's liberty is not at issue.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Wright v. Dir. of Corr.*, 443 F. App'x 289, 293 (9th Cir. 2011).  A court may request, but cannot compel, counsel to appear pro bono on a plaintiff's behalf.  *See* 28 U.S.C. § 1915(e)(1); *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989).  The appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is limited to cases presenting "exceptional circumstances."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  In determining whether "exceptional circumstances" exist, courts consider "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved."  *Id.* (internal quotation marks and citation omitted).  Neither of these considerations is dispositive, so they must be viewed together.  *Id.*

Here, Char has not shown that his case presents exceptional circumstances.  Although Char notes that he cannot afford counsel, he is incarcerated, and he has limited access to the law library, these allegations are not enough.  *See Tilton v. Brown*, No. 2:12-cv-02020 LKK DAD P, 2013 WL 3804583, at *3 (E.D. Cal. July 19, 2013) ("Circumstances common to most prisoners, such as lack of legal

education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel."), *adhered to on reconsideration*, No. 2:12-cv-02020 LKK, 2013 WL 4647984 (E.D. Cal. Aug. 28, 2013).

The Court also notes that the issues presented are not complex, and, judging by the Char's multiple pleadings, he is well-able to articulate his claims pro se.  In addition, at this point, it is too early to tell if Char's claims are likely to succeed. Accordingly, Char's Motion to Appoint Counsel, ECF No. 9, is DENIED without prejudice to Char filing another request once the operative pleading is served and Defendants have filed an Answer or other response.

## IV.  <u>CONCLUSION</u>

(1)  Char's excessive force claims in Count I against Sgt. Jefferson, CO Irvine, and CO Duarte; his threat to safety claims in Count II against Warden Harrington, Deputy Warden Antonio, Cpt. White, and CO Mock; and his intentional infliction of emotional distress claim in Count IV against Sgt. Jefferson may proceed.

(2)  Char's remaining claims are DISMISSED for the reasons set forth above.

(3)  Char may file an amended pleading that attempts to cure the noted deficiencies in those claims dismissed with leave granted to amend, if possible, on or before **March 29, 2024**.

(4)  If he chooses to file an amended pleading, Char must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(5)  IN THE ALTERNATIVE, Char may notify the court in writing on or before **March 29, 2024**, that he elects to proceed with his excessive force claims against Sgt. Jefferson and CO Irvine, his threat to safety claims against Warden Harrington and Deputy Warden Antonio, and his intentional infliction of emotional distress claims against Sgt. Jefferson, and these claims shall be served.  Proceeding on these claims does not preclude Char from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders of this

court.  If Char fails to file either an amended pleading or a notice of election, the court will direct that the Complaint be served as limited by this Order.

(6)  The Clerk is DIRECTED to send Char a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading.

(7)  Char's Motion to Appoint Counsel, ECF No. 9, is DENIED without prejudice to Char filing another request once the operative pleading is served and Defendants have filed an Answer or other response.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 28, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARK ALAN CHAR VS. MICHAEL JEFFERSON; _et al._; CV 23-00474 LEK-KJM; ORDER: (1) DISMISSING IN PART FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND; AND (2) DENYING MOTION FOR APPOINTMENT OF COUNSEL**